UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER MATTEI, Petitioner, v. SEAN MEDEIROS, Respondent. | CIVIL ACTION NO. 17-10869-WGY |

YOUNG, D.J. June 13, 2018

**MEMORANDUM & ORDER**

## I. INTRODUCTION

Petitioner Alexander Mattei ("Mattei") is a state prisoner at the Massachusetts Correctional Institution in Norfolk. Mattei was convicted of assault with intent to rape and assault and battery in the Massachusetts County Superior Court sitting in and for the County of Essex on September 16, 2011. Mattei has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts two claims: (1) his rights to confrontation were violated by restrictions on the cross-examination of a substitute DNA analyst, and (2) the trial judge erred in restricting defense counsel's cross-examination of a police witness. Pet. Writ Habeas Corpus ("Pet'r's Pet."), ECF No. 1. The respondent, Sean Medeiros ("Medeiros") opposes the petition, arguing that the Massachusetts Appeals Court decision

did not unreasonably apply clearly established federal law. Resp't's Mem. Opp'n Pet. Writ Habeas Corpus ("Resp't's Opp'n"), ECF No. 13. For the reasons discussed infra, this Court DENIES Mattei's request for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**A. Procedural History**

On May 20, 2002, Mattei was charged with home invasion, breaking and entering with intent to commit a felony, assault with intent to rape, indecent assault and battery, two counts of assault by means of a dangerous weapon, and assault and battery. Resp't's Further Supplemental Answer ("Supp. Answer") at 179, ECF No. 14. On April 2, 2004, Mattei was convicted of six out of seven of the offenses. Id. at 180. Mattei appealed the convictions, and in 2008, the Massachusetts Appeals Court affirmed the convictions. Id. In 2010, the Supreme Judicial Court granted further appellate review. Id. The Supreme Judicial Court vacated the convictions and remanded the case for a new trial on two grounds: (1) that expert testimony ought not have been admitted without accompanying statistical explanations, and (2) that the judge improperly limited defense counsel's cross-examination. Commonwealth v. Mattei, 455 Mass. 840, 862 (2010).

After a second jury trial in 2011, Mattei was convicted of assault with intent to rape and assault and battery, and was

acquitted of the remaining charges.  Supp. Answer at 181.  On appeal from that conviction, Mattei raised three claims: (1) he was deprived of an opportunity to cross-examine a substitute DNA analyst, (2) the trial judge improperly restricted defense counsel's cross-examination of a police witness and refused to give a Bowden[1] instruction, and (3) the prosecutor made several errors in her closing argument.  Commonwealth v. Mattei, 90 Mass. App. Ct. 577, 578 (2016).  The Massachusetts Appeals Court affirmed the convictions on October 27, 2016.  Id. at 584.  The Supreme Judicial Court denied further appellate review on March 6, 2017.  Commonwealth v. Mattei, 476 Mass. 1112 (2017).  On May 15, 2017, Mattei filed a petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody.  Pet'r's Pet. 1.

**II. ANALYSIS**

Mattei argues that (1) his confrontation rights were violated when a substitute DNA analyst was not sufficiently cross-examined, and (2) the trial judge erred in restricting defense counsel's cross-examination of a police witness.

---

[1] Under Commonwealth v. Bowden, 379 Mass. 472 (1980), in appropriate circumstances a defendant is permitted to argue inadequacies in a police investigation.  In Bowden, the Supreme Judicial Court reversed and remanded defendant Bowden's convictions because, among other things, "[t]he failure of the authorities to conduct certain tests or produce certain evidence was a permissible ground on which to build a defense." Id. at 485-86.

Pet'r's Pet. 6-8.  This Court concludes that neither of these arguments are meritorious and DENIES Mattei's request for relief under 28 U.S.C. § 2254.

**A. Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs petitions for habeas corpus seeking relief from convictions in state court.  See Hyatt v. Gelb, 142 F. Supp. 3d 198, 202 (D. Mass. 2006).  A district court may entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  Habeas relief may be granted only if the petitioner is able to show that the state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established federal law under 28 U.S.C. § 2254(d) if "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."  Williams v. Taylor, 529 U.S. 362, 405

(2000).  In addition, a state court decision may be an unreasonable application of federal law if it identifies the applicable governing legal rule, "but unreasonably applies it to the facts of the particular state prisoner's case."  Id. at 407.

State court decisions are given substantial deference; the incorrectness of a state court decision does not alone warrant relief for a petitioner.  Instead, relief may be granted only if the state court decision in question features "'some increment of incorrectness beyond error' that is 'great enough to make the decision unreasonable in the independent objective judgment of the federal court.'"  Evans v. Thompson, 465 F. Supp. 2d 62, 67 (D. Mass 2006) (quoting Norton v. Spencer, 351 F.3d 1, 8 (1st Cir. 2003)), aff'd, 518 F.3d 1 (1st Cir. 2008).  Put simply, if a state court's decision "was reasonable, it cannot be disturbed" on habeas review.  Hardy v. Cross, 565 U.S. 65, 72 (2011) (per curiam).

The relevant law necessary for an analysis under 28 U.S.C. § 2254(d)(1) is limited to the holdings of Supreme Court cases existing at the time of the state court decision, and does not include the dicta in such cases.  See Williams, 529 U.S. at 412.

   **B. Confrontation Clause**

Mattei first argues that his "confrontation rights were abridged" when the Commonwealth called crime lab analyst Brian Cunningham to provide opinion testimony based on original DNA

test results from tests completed by the initial DNA analyst, Stacey Edward. Pet'r's Mem. Supp. Pet. Writ. Habeas Corpus ("Pet'r's Mem.") 9, ECF No. 12. Medeiros explains that, according to precedent, "the second analyst's opinion was admissible even if it was based on work conducted by the first analyst." Resp't's Opp'n 8. This Court agrees with Medeiros as well as the Massachusetts Appeals Court's holding; Mattei's rights under the Confrontation Clause were not violated by the DNA analyst's opinion testimony.

The Sixth Amendment to the United States Constitution, specifically the Confrontation Clause, provides that "the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court noted that this right prohibits testimonial statements by a person who does not testify at trial "unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 54 (2004). A testimonial statement is a statement that the declarant would reasonably expect to be used in a prosecution. See, e.g., id. at 51-52; Davis v. Washington, 547 U.S. 813, 821 (2006) (victim statement to 911 operator was not testimonial and not barred by Confrontation Clause, but victim's written affidavit to a police officer was testimonial and therefore barred by Confrontation Clause).

The Supreme Court has expanded Confrontation Clause jurisprudence since Crawford to apply to scientific reports. See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 345 (2009); Bullcoming v. New Mexico, 564 U.S. 647, 669 (2011). In Melendez-Diaz, the Supreme Court held that certificates of analysis from a forensic laboratory that tested a substance found in the defendant's bag were testimonial. Melendez-Diaz, 557 U.S. at 345. The Court compared the certificates to live testimony because they were "quite plainly affidavits," id. at 310, and did "precisely what a witness does on direct examination," id. at 311 (quoting Davis, 547 U.S. at 830). Since the certificates of analysis were made to establish or prove "that the substance found in the possession of Melendez-Diaz . . . was, as the prosecution claimed, cocaine," the Court held they could not be introduced unless the authors of the certificates were subject to cross-examination. Id. at 310-11. Similarly in Bullcoming, the Supreme Court specifically held that the "testimonial certification" of a blood alcohol analysis report was an out-of-court testimonial statement of the forensic analyst who certified the report. Bullcoming, 564 U.S. at 657. While it is true that the test results were generated by a machine, "[the analyst's] certification, however, reported more than a machine-generated number." Id. at 659-60. Because the certified report was received in evidence through the in-court

testimony of a different surrogate analyst, the evidence violated the defendant's rights to confrontation. Id. at 652. The Court explained in Bullcoming that "surrogate testimony . . . could not convey what [the original analyst] knew or observed about the events his certification concerned, i.e., the particular test and testing process he employed." Id. at 661.

Then came Williams v. Illinois, 567 U.S. 50 (2012) (plurality opinion), a decision about which Justice Kagan remarked, "I call Justice Alito's opinion 'the plurality,' because that is the conventional term for it. But in all except its disposition, his opinion is a dissent: Five justices specifically reject every aspect of its reasoning and every paragraph of its explication." Williams, 567 U.S. at 120 (Kagan, J., dissenting). Despite this, the plurality opinion appears to hold that an expert analyst could offer an opinion on a Cellmark DNA report because such a report is "very different from the sort of extrajudicial statements, such as affidavits," and thus not a violation of the Confrontation Clause. Id. at 58 (plurality opinion). At the very least, this ruling relaxes the standards of Melendez-Diaz and Bullcoming if it does not overrule them sub silentio, at least in the DNA context.[2] See

[2] Williams v. Illinois is a confusing decision. Here's my attempt to explain it, together with a suggestion for trial judges having to apply it:

---

In Williams v. Illinois, 567 U.S. 50 (2012), the Supreme Court reviewed a "petitioner's bench trial for rape, [where] the prosecution called an expert who testified that a DNA profile produced by an outside laboratory, Cellmark, matched a profile produced by the state police lab using a sample of petitioner's blood. On direct examination, the expert testified that Cellmark was an accredited laboratory and that Cellmark provided the police with a DNA profile. The expert also explained the notations on documents admitted as business records, stating that, according to the records, vaginal swabs taken from the victim were sent to and received back from Cellmark." Id. at 56 (plurality opinion).

Justice Alito, for the plurality, wrote that even if the Cellmark report had been introduced for its truth, it was not testimonial because it was not prepared for "the primary purpose of accusing a targeted individual." Id. at 83-85. This formulation garnered a total of four votes, as Justice Alito was joined by Chief Justice Roberts and Justices Kennedy and Breyer. Id. at 55. Under the plurality's definition, a statement is not testimonial unless it was made to accuse a specific person. Id. at 83-85.

Justice Thomas rejected that definition. Id. at 114 (Thomas, J., concurring). He agreed that for a statement to qualify as testimonial, it must be made with a requisite primary purpose, which he described thusly: "[F]or a statement to be testimonial within the meaning of the Confrontation Clause, the declarant must primarily intend to establish some fact with the understanding that his statement may be used in a criminal prosecution." Id. at 113-14. He criticized the accusatory statement concept newly formulated by the plurality because it "lacks any grounding in constitutional text, in history, or in logic." Id. at 114.

Justice Kagan, in a dissent joined by Justices Scalia, Ginsburg, and Sotomayor, also rejected the plurality's definition of the primary purpose test. Id. at 118 (Kagan, J., dissenting). Justice Kagan wrote, "Where that test comes from is anyone's guess. Justice Thomas rightly shows that it derives neither from the text nor from the history of the Confrontation Clause. And it has no basis in our precedents. We have previously asked whether a

statement was made for the primary purpose of establishing 'past events potentially relevant to later criminal prosecution' –- in other words, for the purpose of providing evidence. Davis, 547 U.S., at 822, 126 S. Ct. 2266; see also Bullcoming, 564 U.S., at ----, 131 S. Ct. at 2716-2717; Bryant, 562 U.S., at ----, ----, 131 S. Ct., at 1157, 1165; Melendez-Diaz, 557 U.S., at 310-311, 129 S. Ct. 2527; Crawford, 541 U.S., at 51-52, 124 S. Ct. 1354. None of our cases has ever suggested that, in addition, the statement must be meant to accuse a previously identified individual; indeed, in Melendez-Diaz, we rejected a related argument that laboratory 'analysts are not subject to confrontation because they are not "accusatory" witnesses.' 557 U.S., at 313, 129 S. Ct. 2527." Id. at 135 (first citation omitted).

. . . .

The Massachusetts Supreme Judicial Court faced much the same situation in Commonwealth v. Greineder, 464 Mass. 580 (2013). In this jury trial for murder, a DNA expert called by the prosecution testified on direct examination to the details and results of the nontestifying analyst's DNA test results. Id. at 582. Relying on Williams, a unanimous Supreme Judicial Court held that the testifying expert's "opinion that the defendant's DNA matched the DNA on items recovered from the crime scene was properly admitted. Expert opinion testimony, even that which relies for its basis on the DNA test results of a nontestifying analyst not admitted in evidence, does not violate a criminal defendant's right to confront witnesses against him under either the Sixth Amendment or art. 12 of the Massachusetts Declaration of Rights." Id. at 603. As a matter of Massachusetts evidentiary law, however, admitting such details and results of a non-testifying analyst's DNA tests was error, albeit harmless in Greineder's case. The Supreme Judicial Court was at pains to point out:

> [W]e use the present opportunity to emphasize to judges that the hearsay bases of expert opinion testimony are inadmissible on direct examination. As concerns eliciting only the expert's opinion, the prosecutor, as a general matter, may first ask the expert for an opinion, given the expert's background and training and after

review of the underlying data, whether the defendant, given his or her DNA profile authenticated by chain of custody evidence as having originated from the defendant, could be excluded as a possible source of DNA recovered from the crime scene, similarly authenticated by chain of custody evidence. If the expert opines that the defendant could not be excluded as a possible contributor, a prosecutor may then elicit an expert's opinion on the significance of the DNA evidence. R.C. Michaelis, R.G. Flanders, Jr., & P.H. Wulff, A Litigator's Guide to DNA: From the Laboratory to the Courtroom 297-298 (2008). The prosecutor may ask the expert for his or her opinion on the statistical likelihood that the DNA profile found on the relevant exhibit would be found in an individual randomly selected from the population. See note 9, supra. See also Williams, supra at 2270 n. 2 (Kagan, J., dissenting) (assumptions, framed in hypothetical question 'if X is true, then Y follows,' pass constitutional muster). See generally P.M. Lauriat & J.F. McHugh, Massachusetts Expert Witnesses § 6.1.2 (Mass. Cont. Legal Educ. 2d ed. 2010). Greater detail regarding specific allelic presence at various loci is unnecessary and, under our evidentiary rules, prohibited on direct examination of a forensics expert who did not conduct the underlying DNA testing.

Id. at 601-02 (first citation omitted).

In light of all this, while it is appropriate to jump directly from qualifying an expert to eliciting that expert's opinions, see Mass. G. Evid. Ann. 703, a careful judge may require, as well within her discretion, that the basis for that opinion first be admitted in evidence.

William G. Young, John R. Pollets & Christopher Poreda, Evidence § 800.1 (3d ed. Supp. 2018), in 20 Mass. Prac. Series 22-24 (Thomson Reuters 2016).

Colleen Clark, DNA Analysis and the Confrontation Clause: "Special Needs" Category for DNA Testimonial Evidence, 44 Golden Gate U. L. Rev. 195, 196 (2014).

Constrained by Williams, the First Circuit affirmed in Barbosa v. Mitchell, 812 F.3d 62 (1st Cir. 2016), the denial of habeas relief in circumstances similar to those in the case at bar. In Barbosa, the Court held that the admission of a senior criminalist's expert testimonial opinion on the results of a DNA test performed by another DNA analyst was proper. Id. at 67. The First Circuit pointed to the Supreme Court's plurality decision in Williams to explain that there is no Confrontation Clause precedent proposing that "admitting an opinion such as that offered by [a surrogate DNA analyst] violates the right to confrontation." Id.

Under Confrontation Clause precedent, the expert testimony of analyst Brian Cunningham was properly admitted. Cunningham provided opinion testimony concerning original DNA test results from testing completed by an initial DNA analyst. See Mattei, 90 Mass. App. Ct. at 578-79. The holding in Williams indicates that the admission of an expert opinion based on a scientific DNA report prepared by another does not violate the right to confrontation. 567 U.S. at 57.[3]

[3] Charging the jury in these cases presents special problem as well. See generally Pooja Chaudhuri, A Right to Rational

The Appeals Court thus correctly ruled here that "[a]n expert may testify as to his opinion, even if it is based on work conducted by another analyst." Mattei, 90 Mass. App. Ct. at 579. The second analyst's opinion testimony was admissible even though it was based on testing done by the first analyst. Id. at 580. Medeiros' rights under the Confrontation Clause were not violated by the DNA analyst's opinion testimony. Id. A certificate of appealability will issue on this point.[4]

---

Juries? How Jury Instructions Create the "Bionic Juror" in Criminal Proceedings Involving DNA Match Evidence, 105 Cal. L. Rev. 1807, 1819 (2017).

[4] While the decision of the Massachusetts Appeals Court in Mattei faithfully reflects Williams' holding, its formulation of the rule (quoted above) may well extend Williams' narrow holding and almost certainly goes farther than warranted by the decision of the Supreme Judicial Court in Commonwealth v. Greineder.

Distortions creep into the law when courts fail to distinguish between a higher court's holding (which must be obeyed under the doctrine of stare decisis) and its dicta (which is only persuasive). See Neal Devins & David Klein, The Vanishing Common Law Judge?, 165 U. Pa. L. Rev. 595, 620-21 (2017); see also Ryan D. Walters, Fragmenting the Judiciary: Shifting Implementation of Supreme Court Doctrine from Federal Courts to State Courts, 42 Cap. U. L. Rev. 951 (2014) (suggesting state courts more likely than federal to push back against Supreme Court doctrine). See generally Bryan A. Garner et al., The Law of Judicial Precedent (Thomson Reuters 2016). This problem is compounded today by the marginalization of the American jury (where trial judges must necessarily closely analyze appellate decisions to craft precise jury instructions). See William G. Young, Juries Make a Difference, Address to 2017 Forum for State Appellate Court Judges, in Jurisdiction: Defining State Courts' Authority 65 (Pound Civil Justice Institute, 2018). See also Winfield v. Town of Andover, Civil Action No. 17-11051-WGY, 2018 WL 1627437, at *8 n.5 (D. Mass. Apr. 4, 2018) (decrying the "over academicization" of our trial processes). The result of all this is that our jurisprudence tends ever more toward the "Europeanization" of American courts,

**C. Cross-Examination of Police Witness**

Mattei next argues that the Appeals Court erred in holding that the trial judge did not improperly "restrict the defense's ability to show bias and incompetence of the officers' investigation" when the trial judge limited his cross-examination of multiple officers, thereby limiting his attempted Bowden defense under state evidentiary law.[5] Pet'r's Mem. 15. Medeiros correctly argues that under 28 U.S.C. § 2254, "no habeas claim exists as to state criminal convictions unless the alleged errors are violations of the Constitution, laws, or treaties of the United States." Resp't's Opp'n 11.

"A necessary predicate for the granting of federal habeas relief . . . is a determination by the federal court that [a petitioner's] custody violates the Constitution, laws, or

---

i.e. a vertical "code" system where identifying the correct "rule" is all too often the extent of what passes for analysis. See William G. Young, An Open Letter to U.S. District Judges, The Federal Lawyer, July 2003, at 30.

Simply put, the role of the Confrontation Clause in this area needs refinement and explication on a sound analytic base. Unfortunately, AEDPA says of the "inferior" courts: "Theirs not to reason why, theirs but" to follow the muddled (in this area, at least) jurisprudence of the Supreme Court. 28 U.S.C. § 2554(d)(1); see Alfred Lord Tennyson, The Charge of the Light Brigade. Thoughtful voices have raised concerns whether this statutory restriction on the exercise of the Article III judicial function is itself constitutional. See, e.g., Evans v. Thompson, 524 F.3d 1 (1st Cir. 2008) (Lipez, J.).

[5] Although state evidentiary law is not subject to federal habeas review, Mattei makes a due process argument, addressed infra at 15, on the same state evidentiary grounds.

treaties of the United States." Rose v. Hodges, 423 U.S. 19, 21 (1975). The Supreme Court has held that "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990); see Pulley v. Harris, 465 U.S. 37, 41 (1984). In Estelle v. McGuire, 502 U.S. 62 (1991), the Court reemphasized "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 67-68.

Because Mattei complains about issues of state evidentiary law which are not subject to review under 28 U.S.C § 2254, this Court declines to review the decision of the Appeals Court regarding the limitation of further examination into the police investigation.

**D. Due Process**

Mattei argues finally that the trial judge's limitation of his cross-examination of a second police officer denied him his right to due process of law. Pet'r's Mem. 13. Mattei cites Holmes v. South Carolina, 547 U.S. 319 (2006), to explain "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution

guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Id. at 324 (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)). Medeiros correctly argues that because the standard of review for a state court decision is "reasonableness," habeas relief is not warranted. Resp't's Opp'n 13.

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence." Fed. R. Evid. 403. While the violation of a rule of evidence is not, in itself, a constitutional violation, "an evidentiary error may result in such fundamental unfairness to the defendant as to constitute a due process violation." Evans v. Verdini, 466 F.3d 141, 145 (1st Cir. 2006). Of importance here, federal habeas review is not "a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010). At trial, Mattei was permitted to advance his defense by attempting to expose the inadequacies of the police investigation. Resp't's Opp'n 10-11. Mattei then proceeded to ask another police officer the same question. Id. at 11. The trial judge limited this further examination, and the Appeals Court ruled that the judge exercised proper discretion "where such testimony would have been cumulative." See Mattei, 90 Mass. App. Ct. at 581. The limitation of cumulative testimony, "even if it is

debatable, . . . is not unreasonable.” Wood v. Allen, 558 U.S. 290, 303 (2010). The limitation of Mattei’s cross-examination reasonably occurred only after Mattei attempted to ask a subsequent police officer an identical question. The decision by the trial judge to limit cumulative testimony was reasonable. Mattei was provided a meaningful opportunity to present his whole defense and the limitation of a second cross-examination in no way resulted in fundamental unfairness creating a due process violation.

The Massachusetts Appeals Court’s decision “was [not] contrary to, or involved an unreasonable application of, clearly established Federal law.” 28 U.S.C. § 2254(d))(1). Mattei’s request for habeas relief is denied.

**III. CONCLUSION**

For the reasons stated above, the Court DENIES Mattei’s petition under 28 U.S.C. § 2254 for a writ of habeas corpus. A certificate of appealability will issue as to point II.B above, but not otherwise as the remaining claims are utterly without merit.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE